1  Sterling A. Brennan (SBN 126019)
2     E-Mail: sbrennan@mabr.com
   Carol A. Hanna Girgis (SBN 327099)
3     E-mail: channa@mabr.com
4  MASCHOFF BRENNAN GILMORE ISRAELSEN & MAURIEL LLP
   100 Spectrum Center Drive, Suite 1200
5  Irvine, California 92618
   Telephone: (949) 202-1900
6

7  R. Parrish Freeman (admitted *pro hac vice*)
8     E-mail: pfreeman@mabr.com
   MASCHOFF BRENNAN GILMORE ISRAELSEN & MAURIEL LLP
9  1389 Center Drive, Suite 300
   Park City, Utah 84098
10 Telephone: (435) 252-1360
11
12 Attorneys for Defendant Big Air Franchising, LLC

13              **UNITED STATES DISTRICT COURT**

14             **CENTRAL DISTRICT OF CALIFORNIA**

15 | SLICK SLIDE LLC,                  | Case No. 8:24-cv-00938-DOC-JDE |

16              Plaintiff,

17                                      **DEFENDANT BIG AIR
                                        FRANCHISING, LLC'S NOTICE**
18     v.                              **OF MOTION AND MOTION TO
                                        DISMISS PLAINTIFF'S FIRST**
19 BIG AIR FRANCHISING, LLC,          **AMENDED COMPLAINT**

20              Defendant.             District Judge: Hon. David O. Carter
21                                      Magistrate Judge: Hon. John D. Early
                                        Date: July 29, 2024
22                                      Time: 8:30 a.m.
23                                      Courtroom: 10A

24

25

26

27

28

**TO PLAINTIFF SLICK SLIDE LLC AND ITS ATTORNEYS OF RECORD IN THE ABOVE-CAPTIONED ACTION:**

**PLEASE TAKE NOTICE** that, on **Monday, July 29, 2024, at 8:30 a.m., in Courtroom 10A, 10th floor**, of the United States District Court for the Central District of California (Hon. David O. Carter, United States District Judge, presiding), located at **411 West Fourth Street, Santa Ana, California 92701**, defendant Big Air Franchising, LLC ("Big Air") will, and hereby does, move this Court to dismiss the First Amended Complaint ("FAC," ECF No. 19) of plaintiff Slick Slide LLC ("Slick Slide") under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

The FAC purports to state a single cause of action against Big Air for allegedly inducing infringement of a design patent, U.S. D973,821 (the "'821 patent"). The Court should dismiss the FAC because Slick Slide fails to adequately allege that Big Air had knowledge that its actions would result in direct infringement by others—an essential element for stating a claim for induced infringement. Slick Slide's omission is dispositive. But the exceptionally threadbare nature of the allegations provides an additional basis for dismissal. They are too generic to plausibly suggest an entitlement to relief, and they also fail to exclude obvious alternative explanations for the complained-of conduct. The allegations thus lack the substance necessary to show that Big Air should be subjected to the expense of discovery and continued litigation, as is required in the Ninth Circuit.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on June 14, 2024, between R. Parrish Freeman, counsel for Big Air, and Brett Schatz, counsel for Slick Slide. This motion is and will be based on this notice, the following memorandum of points and authorities, the FAC

/ / /

/ / /

/ / /

**DEFENDANT 'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

and its attached exhibits, matters upon which the Court may take judicial notice, and such other argument and authority as may be presented in connection with the motion.

Dated: June 26, 2024          MASCHOFF BRENNAN GILMORE
                              ISRAELSEN & MAURIEL LLP

                    By:  */s/ R. Parrish Freeman*
                              R. Parrish Freeman (admitted *pro hac vice*)
                              Sterling A. Brennan
                              Carol A. Hanna Girgis

                              Attorneys for Defendant
                              Big Air Franchising, LLC

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................ 1

II.   LEGAL STANDARDS ...................................................................... 1

    A.    Induced infringement requires the inducer's subjective knowledge that the alleged acts of inducement result in direct infringement. ..................... 1

    B.    To survive a motion to dismiss, a complaint must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.......................................................................................... 4

    C.    When faced with two possible explanations, only one of which can be true and only one of which results in liability, a complaint must allege facts tending to exclude the possibility that the alternative explanation is true. ..................................................................................... 7

III.  FACTS ALLEGED IN THE FAC ..................................................... 10

    A.    Big Air and its alleged representative, Zac Wittman. ................................ 10

    B.    The alleged acts of direct infringement by two franchisees and one manufacturer......................................................................................... 11

        1.    The alleged "use" by two franchisees. ................................... 11

        2.    The alleged "manufacture" by one manufacturer. ..................... 11

        3.    The alleged "offer for sale, sale, and importation" by unidentified entities.................................................................. 12

    C.    The two allegedly infringing slides............................................................ 12

    D.    The alleged acts of inducement by Big Air................................................. 13

IV.   ARGUMENT ..................................................................................... 13

    A.    The FAC fails to allege facts to support a reasonable inference that Big Air had knowledge of the alleged direct infringement. ........................... 13

    B.    The FAC's threadbare allegations fail to demonstrate likely discovery of facts needed to warrant the considerable expense associated with litigation.......................................................................................... 19

        1.    The FAC fails to allege facts sufficient to infer actionable inducement.................................................................... 19

**DEFENDANT 'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

2.    The FAC fails to allege facts sufficient to infer Zac Wittman's actual or apparent authority to act for Big Air. ....................................21

3.    The FAC fails to allege facts sufficient to infer actionable substantial similarity between accused slides and claimed ornamental design...............................................................................21

C.    The FAC fails to allege facts tending to exclude the possibility that Big Air's alleged inducement occurred before the patent issued, and that Zac Wittman's alleged conduct thereafter was not directed or authorized by Big Air. ................................................................................23

V.    CONCLUSION .................................................................................25

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................*passim*

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................*passim*

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*,
    681 F.3d 1323 (Fed. Cir. 2012) ............................................................ 1

*In re Century Aluminum Co. Sec. Litig.*,
    729 F.3d 1104 (9th Cir. 2013)....................................................*passim*

*Commil USA, LLC v. Cisco Sys., Inc.*,
    575 U.S. 632 (2015) ...................................................................*passim*

*Doe v. Roman Cath. Archbishop of Los Angeles*,
    247 Cal. App. 4th 953 (2016).............................................................. 21

*Dura Pharmaceuticals, Inc. v. Broudo*,
    544 U.S. 336 (2005) ........................................................................... 5

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) ............................................................. 10

*Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*,
    909 F.3d 398 (Fed. Cir. 2018) ............................................................. 2

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011) ...................................................................*passim*

*Innerlite, Inc. v. Zirc Dental Prod., Inc.*,
    2014 WL 12601024 (C.D. Cal. Sept. 2, 2014).................................... 17

*Jorge Valdes v. Nationwide Real Est. Executives, Inc.*,
    2021 WL 2134159 (C.D. Cal. Apr. 22, 2021) (Carter, J.) .................... 6

*Kansas Penn Gaming, LLC v. Collins*,
    656 F.3d 1210 (10th Cir. 2011)........................................................... 6

*Lee v. City of L.A.*,
    250 F.3d 668 (9th Cir. 2001)............................................................. 17

*Linear Tech. Corp. v. Impala Linear Corp.*,
    379 F.3d 1311 (Fed. Cir. 2004) ....................................................................... 1

*Moore v. Mars Petcare US, Inc.*,
    820 F. App'x 573 (9th Cir. 2020)................................................................... 10

*Nat'l Presto Indus., Inc. v. W. Bend Co.*,
    76 F.3d 1185 (Fed. Cir. 1996) ....................................................................... 24

*OddzOn Prod., Inc. v. Just Toys, Inc.*,
    122 F.3d 1396 (Fed. Cir. 1997) ..................................................................... 22

*Pace v. Swerdlow*,
    519 F.3d 1067 (10th Cir. 2008) ....................................................................... 7

*Pereda v. Atos Jiu Jitsu LLC*,
    85 Cal. App. 5th 759 (2022) ......................................................................... 20

*Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*,
    30 F.4th 1109 (Fed. Cir. 2022) .................................................................. 3, 4

*Slick Slide LLC v. Big Air University City*,
    Case No. 3:23-cv-00348-FDW-SCR (W.D.N.C. 2023).............................. 17, 18

*Slick Slide LLC v. Pelletier*,
    Case No. 6:23-cv-03924-JDA (D.S.C. 2023)............................................... 17, 18

*Slick Slide LLC v. Wittman*,
    Case No. 1:23-cv-01486-WCG (E.D. Wis. 2023)................................. 17, 18, 25

*Sport Dimension, Inc. v. Coleman Co.*,
    820 F.3d 1316 (Fed. Cir. 2016) ..................................................................... 22

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) .................................................................*passim*

*TecSec, Inc. v. Adobe Inc.*,
    978 F.3d 1278 (Fed. Cir. 2020) ......................................................... 3, 14, 16

*Unwired Planet, LLC v. Apple Inc.*,
    829 F.3d 1353 (Fed. Cir. 2016) ................................................................. 2, 3

**Statutes**

35 U.S.C. § 271...........................................................................................*passim*

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

**Court Rules**

Federal Rule of Civil Procedure 8 ....................................................................*passim*

Federal Rule of Civil Procedure 12 .................................................................... 8, 9

Federal Rule of Evidence 201 ................................................................................ 17

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>[1]

Big Air provides the following memorandum of points and authorities in support of its motion to dismiss Slick Slide's FAC.

## I.    INTRODUCTION

The FAC purports to state a single cause of action against Big Air for allegedly inducing infringement of the '821 patent. As explained in the notice of this motion, the Court should dismiss the FAC because it fails to adequately allege Big Air's knowledge that its actions would result in direct infringement by others—an essential element for stating a claim for induced infringement. That omission is dispositive. But the exceptionally threadbare nature of the allegations provides an additional basis for dismissal. They are too generic to plausibly suggest an entitlement to relief, and they also fail to exclude obvious alternative explanations for the complained-of conduct. The allegations thus lack the substance needed to show that Big Air should be subjected to the expense of discovery and continued litigation, as is required in the Ninth Circuit.

## II.    LEGAL STANDARDS

### A.    Induced infringement requires the inducer's subjective knowledge that the alleged acts of inducement result in direct infringement.

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). "It is axiomatic that '[t]here can be no inducement or contributory infringement without an underlying act of direct infringement.'" *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1333 (Fed. Cir. 2012) (quoting *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed. Cir. 2004)). "In order to succeed on a claim of inducement, the patentee must show, first that there has been direct infringement, and second that the

---

[1] Terms specially defined in the notice of motion shall have the same meaning in this memorandum.

alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*, 909 F.3d 398, 407 (Fed. Cir. 2018) (citation and quotation marks omitted).

In its 2011 *Global-Tech* decision, the Supreme Court held that "induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). *Global-Tech* thus clarified that induced infringement requires knowledge of, and intent to cause, the resulting direct infringement. *Global-Tech*, 563 U.S. at 760 ("Although the text of § 271(b) makes no mention of intent, we infer that at least some intent is required."), 766 ("[W]e now hold that induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement.").

Four years later, in *Commil*, the Supreme Court amplified that "*Global-Tech* requires more" than knowledge of the patent alone: "[i]t requires proof the defendant knew the acts were infringing." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 642 (2015). That is, the "actively induces infringement" language in § 271(b) "requires intent to 'bring about the desired result,' which is infringement." *Id.* (quoting *Global-Tech*, 563 U.S. at 760). *Commil* thus expressly rejected the argument "that *Global-Tech* should be read as holding that only knowledge of the patent is required for induced infringement" because such a reading "would contravene *Global-Tech*'s explicit holding that liability for induced infringement can only attach if the defendant knew of the patent and knew as well that 'the induced acts constitute patent infringement.'" *Commil*, 575 U.S. at 642 (quoting *Global-Tech*, 563 U.S. at 766).

In the wake of *Global-Tech* and *Commil*, the Federal Circuit has noted that "[t]he Supreme Court's *Global-Tech Appliances* and *Commil* decisions require a showing of the accused infringer's subjective knowledge as to the underlying direct infringement." *Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353, 1364 (Fed. Cir.

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

2016). This requires "proof of[] the defendant's subjective state of mind, whether actual knowledge or the subjective belief (coupled with action to avoid learning more) that characterizes willful blindness." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1286 (Fed. Cir. 2020). Liability for inducement thus requires proof of the alleged inducer's (1) actual knowledge of the resulting direct infringement or (2) culpability under the doctrine of willful blindness. *See Global-Tech*, 563 U.S. at 766 ("induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement;" "the evidence in this case was plainly sufficient to support a finding of [the accused's] knowledge under the doctrine of willful blindness"); *Unwired Planet*, 829 F.3d at 1364 ("This knowledge requirement may be satisfied under the doctrine of willful blindness.").

"Willful blindness is a standard of 'limited scope that surpasses recklessness and negligence,'" *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, 30 F.4th 1109, 1118 (Fed. Cir. 2022) (quoting *Global-Tech*, 563 U.S. at 769), and "[t]he Supreme Court [has] cautioned that the accused's deliberate indifference to a known risk of infringement alone is not sufficient." *Unwired Planet*, 829 F.3d at 1364; *Global-Tech*, 563 U.S. at 766 ("deliberate indifference to a known risk that a patent exists is not the appropriate standard under § 271(b)"). Rather, the doctrine of "[w]illful blindness … is characterized by 'two basic requirements: (1) The defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact.'" *Roche Diagnostics*, 30 F.4th at 1118 (quoting *Global-Tech*, 563 U.S. at 769). In *Global-Tech*, for example, the willful blindness standard was met by evidence that the defendant's president withheld critical information from legal counsel engaged to deliver a clearance opinion, indicating an intent "to manufacture a claim of plausible deniability in the event that his company was later accused of patent infringement." *Global-Tech*, 563 U.S. at 770–71. Before *Global-Tech*, the Federal Circuit may have endorsed imposing liability under a lesser standard, but the court

3

has since made clear that "to the extent our prior case law allowed the finding of induced infringement based on recklessness or negligence, such case law is inconsistent with *Global-Tech* and no longer good law." *Roche Diagnostics*, 30 F.4th at 1118 (citation and quotation marks omitted).

**B.    To survive a motion to dismiss, a complaint must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.**

Following the Supreme Court's seminal holdings in *Iqbal* and *Twombly* on the pleading standards under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must do more than provide notice; it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This "plausibility" standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

The Court explained in *Iqbal* that the plausibility standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "[I]t asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Therefore, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[; t]hreadbare recitals of

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In reaching this holding, the Court reasoned that, while "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, [] *it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.*" *Id.* at 678–79 (emphasis added).

The Supreme Court has thus recognized—in *Iqbal*, *Twombly*, and in other cases—that discovery is too expensive and burdensome to allow one party to impose it on another without stating enough detail to show a plausible entitlement to relief. *See id.* ("Rule 8 … does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"); *see also Twombly*, 550 U.S. at 559–60 ("Probably, then, it is only by taking care to require allegations that reach the level suggesting conspiracy that we can hope to avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the discovery process will reveal relevant evidence to support a § 1 claim.") (citation, quotation marks, and brackets omitted); *see also Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347 (2005) ("… allowing a plaintiff to forgo giving any indication of the economic loss and proximate cause that the plaintiff has in mind … would permit a plaintiff with a largely groundless claim to simply take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value, rather than a reasonably founded hope that the discovery process will reveal relevant evidence.") (citation, quotation marks, and brackets omitted). The plausibility standard thus ensures that largely groundless claims do not represent an inflated asset in the hands of a plaintiff, based solely on the prospect of expensive discovery driving up the settlement value.

The Ninth Circuit has carried that reasoning forward, noting the potentially unfair advantage that an overly lenient application of the notice-pleading standard could give to a plaintiff:

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

> In some cases, particularly in complex commercial cases, notice pleading rules give an advantage—perhaps an unfair advantage—to the plaintiff. If a plaintiff can survive a motion to dismiss on the pleadings in such cases, he or she can put the defendant to enormous expense in discovery. In practical terms, this means that the settlement value of a suit jumps substantially the moment the complaint survives a motion to dismiss.

*Starr v. Baca*, 652 F.3d 1202, 1212 (9th Cir. 2011). After analyzing *Twombly*, *Iqbal*, and several other Supreme Court cases regarding the Rule 8 pleading standard, the *Starr* court concluded that, "whatever the difference between these cases," one of the "two principles common to all of them" is that:

> the factual allegations that are taken as true [as distinguished from conclusory allegations not due the presumption of truth] must plausibly suggest an entitlement to relief, *such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation*.

*Id.* at 1216 (emphasis added). Other circuits have endorsed the same view, as has this Court. *See*, *Jorge Valdes v. Nationwide Real Est. Executives, Inc.*, No. 8:20-cv-01734-DOC-KES, 2021 WL 2134159, at *2 (C.D. Cal. Apr. 22, 2021) (Carter, J.) ("The Ninth Circuit has clarified that (1) a complaint must 'contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively,' and (2) 'the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.'") (quoting *Starr*, 652 F.3d at 1216); *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) ("This [plausibility] pleading requirement serves two purposes: 'to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense,' and 'to avoid ginning up the costly machinery associated with our civil discovery regime on

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

the basis of a largely groundless claim.'") (quoting *Pace v. Swerdlow*, 519 F.3d 1067, 1076 (10th Cir. 2008) (concurrence)) (internal quotation marks omitted).

Ultimately, in any case, "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Id.* (citing Fed. R. Civ. P. 8(a)(2)).

### C.     When faced with two possible explanations, only one of which can be true and only one of which results in liability, a complaint must allege facts tending to exclude the possibility that the alternative explanation is true.

In both *Twombly* and *Iqbal*, the Supreme Court held that the plausibility pleading standard cannot be met if the allegations leave room for an "obvious alternative explanation" to negate an inference of wrongful conduct. *Twombly*, 550 U.S. at 567–569; *Iqbal*, 556 U.S. at 682–83.

In *Twombly*, the Court found that "a natural explanation for the noncompetition alleged is that the former Government-sanctioned monopolists were sitting tight, expecting their neighbors to do the same thing." *Twombly*, 550 U.S. at 568. This provided an "obvious alternative explanation" for the "sparse competition among large firms dominating separate geographical segments of the market," *id.*, "but the disappointment [at the lack of competition] does not make conspiracy plausible," *id.* at 569. The Court thus concluded that "[b]ecause the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* at 570.

In *Iqbal*, the Court reasoned that "[i]t should come as no surprise that a legitimate policy directing law enforcement to arrest and detain individuals because of their suspected link to the attacks [of September 11, 2001] would produce a

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

disparate, incidental impact on Arab Muslims, even though the purpose of the policy was to target neither Arabs nor Muslims." *Iqbal*, 556 U.S. at 682. The Court concluded that "the purposeful, invidious discrimination respondent asks us to infer ... is not a plausible conclusion" in view of the obvious alternative explanation of incidental impact with no discriminatory intent. *Id.*

In the *Starr* decision discussed above, the Ninth Circuit found the upshot of *Iqbal*, *Twombly*, and the other examined cases, to be "[i]f there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, *both of which are plausible*, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr*, 652 F.3d at 1216 (emphasis added). The *Starr* court found there to be competing explanations, but both were *plausible* based on the quality of the facts alleged, so the complaint survived the motion to dismiss:

> There is no "obvious alternative explanation," within the meaning of *Iqbal*, for why Sheriff Baca took no action to stop his subordinates' repeated violations of prisoners' constitutional rights despite being repeatedly confronted with those violations, such that the alternative explanation requires us to conclude that Starr's explanation "is not a plausible conclusion."

*Id.* The court added that "[p]laintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im*plausible." *Id.* (emphasis in original).

Two years after its *Starr* decision, in *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013), the Ninth Circuit affirmed dismissal of a market manipulation claim because "plaintiffs' shares could have come from the secondary offering, but the 'obvious alternative explanation' is that they could instead have come from the pool of previously issued shares." The court explained that "[w]hen faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are

'merely consistent with' their favored explanation but are also consistent with the alternative explanation." *Id*. (citing *Iqbal*, 556 U.S. at 678). "Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, *see Twombly*, 550 U.S. at 554, 127 S.Ct. 1955, in order to render plaintiffs' allegations plausible within the meaning of *Iqbal* and *Twombly*." *Century Aluminum*, 729 F.3d at 1108. The court affirmed dismissal because "plaintiffs' allegations remain stuck in 'neutral territory' because they do not tend to exclude the possibility that their shares came from the pool of previously issued shares." *Id*. (citing *Twombly*, 550 U.S. at 557).

The *Starr* court, on the other hand, found the complaint at issue in that case to have plausibly alleged the required element of deliberate indifference, even under *Iqbal* and *Twombly*. *Starr*, 652 F.3d at 1212. But the *Century Aluminum* court explained that nothing in *Starr* required a different outcome in the case before it. The court emphasized that "plausibility" carries a special meaning when applied to pleading standard jurisprudence:

> This holding is consistent with our opinion in *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011), where there were two *plausible* explanations in contention. *Id.* at 1216. "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, *both of which are plausible,* plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Id.* (emphasis added). Here, however, plaintiffs' explanation is merely *possible* rather than plausible. To render their explanation plausible, plaintiffs must do more than allege facts that are merely consistent with both their explanation and defendants' competing explanation. *See Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. The plaintiff in *Starr* did so. He alleged facts which, accepted as true, tended to exclude the possibility that the defendant was ignorant of the unconstitutional conduct of his subordinates (the competing alternative explanation for

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

why the defendant allegedly took no action to stop that misconduct). *See Starr*, 652 F.3d at 1216. Plaintiffs have not offered allegations of this nature here.

*Century Aluminum*, 729 F.3d at 1108 (emphasis in original).

*Century Aluminum* is not an outlier. The Ninth Circuit has since endorsed it and its progeny as to the need to allege facts that exclude an "obvious alternative explanation" in order to survive a motion to dismiss. *See, e.g.*, *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996–97 (9th Cir. 2014) ("The Plaintiffs' fraud theory is not plausible when considered in light of the innocent explanation that failure of franchise businesses in making rental payments, and their abandonment of leases, took place in the context of a deep national recession."); *Moore v. Mars Petcare US, Inc.*, 820 F. App'x 573, 576 (9th Cir. 2020) ("The main problem with Plaintiffs' conspiracy theory, however, is that they do not explain or account for the role of other players in the market.").

## III.   FACTS ALLEGED IN THE FAC

### A.   Big Air and its alleged representative, Zac Wittman.

The FAC alleges that defendant Big Air "is a franchisor of trampoline and recreational parks," FAC, ¶ 11, and that Zac Wittman ("Mr. Wittman"), while "serving as a representative of [Big Air] or at least representing that he was a representative of [Big Air]," "instructed" two of Big Air's franchisees to obtain and "use" a slide in each of their respective trampoline parks, *id.*, ¶¶ 14, 17.[2]

The FAC does not allege that Mr. Wittman was a principal or managing member of Big Air, nor does it provide any additional allegations about Mr. Wittman purportedly "serving as a representative of [Big Air] or at least representing that he was a representative of [Big Air]."

---

[2] Big Air uses the singular term "slide" herein to refer to a single slide attraction, which may consist of one or more individual slides.

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

**B.     The alleged acts of direct infringement by two franchisees and one manufacturer.**

**1.     The alleged "use" by two franchisees.**

The FAC identifies BA NE Charlotte, LLC ("Charlotte") and BA Greenville, LLC ("Greenville") as Big Air franchisees, *id.*, ¶¶ 12, 15. The FAC alleges that each "used the slides" depicted in the exhibits attached to the FAC, *id.*, ¶¶ 13, 16, and that "the use of th[os]e slides … constitutes infringement of the '821 patent," *id.*, ¶ 20.

The FAC does not identify any other Big Air franchisees, or any other entities, as having engaged in an allegedly infringing use. The FAC likewise does not provide any dates for when Charlotte and Greenville began the alleged use, nor is there any allegation that the alleged use by both Charlotte and Greenville remains ongoing.

**2.     The alleged "manufacture" by one manufacturer.**

The FAC identifies Dreamland Playground ("Dreamland") as "the manufacturer" of the Greenville and Charlotte slides, *id.*, ¶ 21, and alleges that "the manufacture … of th[os]e slides … constitute[s] infringement of the '821 patent," *id.*, ¶ 20.

The FAC does not allege where "the manufacture" took place, or that it happened within the United States, but does allege that Dreamland is "otherwise referred to as Zhejiang Zhongsheng Amusement Equipment Co., Ltd." *Id.*, ¶ 21. The FAC does not identify any other entity as having engaged in an allegedly infringing manufacture. The FAC likewise does not provide any dates for when Dreamland allegedly manufactured the Charlotte and Greenville slides, nor is there any allegation that Dreamland has manufactured any more than one slide, one time, for Charlotte and one slide, one time, for Greenville.

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

### 3. The alleged "offer for sale, sale, and importation" by unidentified entities.

The FAC also purports to allege that the "offer for sale, sale, and importation of the [Greenville and Charlotte] slides … constitute infringement of the '821 patent," but never identifies any actor as having directly engaged in any of these acts, *id.*, ¶ 20. *See also id.*, ¶ 11, 14, 17, 31 (each alleging "sale," "offer," and/or "importation" in passive voice, with no identification of direct actor).

### C. The two allegedly infringing slides.

The FAC represents that Exhibit B shows the Charlotte slide and that Exhibit C shows the Greenville slide, *id.*, ¶¶ 13 & 16, and alleges further that "the recreational slides depicted in the[se] images … infringe the '821 patent," *id.*, ¶ 26. The FAC does not identify any other allegedly infringing slides. All of the images used in Exhibits B and C are reproduced below.



| Charlotte slide FAC, Ex. B | Greenville slide FAC, Ex. C |
|---|---|

The FAC recites (1) a "hood [] that encloses the first section of the claimed slide," (2) an "overall slide trajectory," and (3) a "slide exit trajectory at the end of the slide" as "ornamental and novel" design elements of the '821 patent, *id.*, ¶ 26, and alleges, in words only, that each of the Charlotte and Greenville slides has a "nearly identical" hood, overall trajectory, and exit trajectory, *id.*, ¶¶ 26 & 27. The FAC identifies some figures from the '821 patent as showing the allegedly "nearly

identical" correspondence, but does not provide any additional explanation, demonstration, or graphical illustration to support the "nearly identical" allegation.

### D. The alleged acts of inducement by Big Air.

The FAC alleges that Big Air "caused and enticed" Charlotte and Greenville to obtain and "use" the slides, *id.*, ¶¶ 14, 17 & 20, by "instructing" them to do so, *id.*, ¶¶ 14 & 17, and identifies Mr. Wittman as the Big Air "representative" who "coordinated the use of the slides" by "designing and sourcing the slides," and who "instructed" Charlotte and Greenville "to install and use the slides," *id.*

The FAC also alleges that Big Air "facilitated the manufacture of the [Charlotte and Greenville slides]" via unnamed "representatives and employees" who "communicated and cooperated with Dreamland and thereby coordinated the manufacture of the slides." *Id.*, ¶ 22.

The FAC does not include any allegations regarding the content of Big Air's respective franchise agreements with Charlotte and Greenville. The FAC does not provide any allegations that Charlotte and Greenville were obligated by contract or any other means to comply with alleged instructions given to them by Big Air or its authorized agents to use any slides manufactured by Dreamland, or to use the Charlotte slide and the Greenville slide allegedly depicted in FAC Exhibits B and C, respectively.

## IV.  ARGUMENT

### A. The FAC fails to allege facts to support a reasonable inference that Big Air had knowledge of the alleged direct infringement.

As explained in section II.A, above, induced infringement requires *both* knowledge of the patent *and* knowledge that the induced acts constitute direct infringement. *Global-Tech*, 563 U.S. at 766; *Commil*, 575 U.S. at 642. The required knowledge is based on the accused inducer's subjective belief and may be either actual or imputed via the doctrine of willful blindness. *Global-Tech*, 563 U.S. at 766. Willful blindness requires more than recklessness or negligence, and more than

1   a deliberate indifference to a known risk of infringement; it requires a subjective

2   belief in a high probability of infringement, coupled with deliberate actions to avoid

3   learning of the infringement. *Id.* at 769. The FAC alleges only facts that go to Big

4   Air's knowledge of the '821 patent. It alleges no facts going to Big Air's subjective

5   belief in, actual knowledge of, or willful blindness to any resulting direct

6   infringement.

7        At paragraphs 32–34, in purporting to state "Count I" for induced

8   infringement, the FAC alleges "[Big Air] has induced infringement [and] …

9   encouraged its franchisees to infringe the '821 patent," FAC, ¶ 34, "and specifically

10  intended to encourage and facilitate that infringement," *id.*, ¶ 32, "willfully and with

11  full knowledge of Slick Slide's rights in the '821 patent," *id.*, ¶ 33. The only cited

12  support for these assertions within Count I is the statement that Big Air's alleged

13  "acts of inducement … were carried out despite having been made aware of the '821

14  patent." FAC, ¶ 33. Knowledge of the patent alone cannot reasonably support an

15  inference of intent to cause infringement, *Commil*, 575 U.S. at 642, nor can "a

16  formulaic recitation of the elements of a cause of action" survive a motion to

17  dismiss, *Twombly*, 550 U.S. at 555, without "some further factual enhancement," *id.*

18  at 557. So, the supporting allegations must be found, if at all, elsewhere in the FAC.

19       Drawing all reasonable inferences in Slick Slide's favor, the only other

20  allegations that appear to relate to Big Air's alleged knowledge of infringement are

21  found at paragraphs 18, 19, 20, and 23. These allegations fail, however, to state

22  "enough fact to raise a reasonable expectation that discovery will reveal evidence of

23  illegal [conduct]," *Twombly*, 550 U.S. at 556, specifically, evidence of Big Air's

24  "subjective state of mind, whether actual knowledge or the subjective beliefs

25  (coupled with action to avoid learning more) that characterizes willful blindness,"

26  *TecSec*, 978 F.3d at 1286.

27       Paragraphs 18 and 19 include allegations that "[Big Air] was aware of the

28  '821 patent," FAC, ¶ 18, because "Jon Cox of [Charlotte] emailed a copy of the

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

'821 patent to representatives of [Big Air], including Kevin Odekirk and Erin
Davis," and also "to Zac Wittman," *id.*, ¶ 19. But knowledge of the patent alone is
not enough; "liability for induced infringement can only attach if the defendant
knew of the patent and knew as well that 'the induced acts constitute patent
infringement.'" *Commil*, 575 U.S. at 642 (quoting *Global-Tech*, 563 U.S. at 766).

The FAC also alleges at paragraph 19 that "[Big Air] franchisees placed [Big
Air] on notice that the '821 patent claims the ornamental design for a recreational
slide," and that "legal advice was needed in connection with the [Charlotte and
Greenville] slides." FAC, ¶ 19. Drawing all reasonable inferences in Slick Slide's
favor, this "notice" does nothing more than state the preamble language of the
patent's sole claim (*see* FAC, Ex. A, '821 patent, face page at item (57)) and a
franchisee's opinion as to the *need for—not the content of—*legal advice. No facts
are alleged to support an inference that Big Air gained actual knowledge or a
subjective belief that the accused slides infringe the '821 patent through these
alleged communications. Paragraph 19 also alleges that "representatives and
employees of [Big Air] discussed the '821 patent in connection with the [Charlotte
and Greenville] slides," but states no additional facts to support any inferences about
the substance of those alleged discussions.

Paragraph 23 is significant because it purports to allege intent to copy, but
fails because, like the other allegations, "it tenders 'naked assertion[s]' devoid of
'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S.
at 557). Paragraph 23 states simply that Big Air "intended those [Charlotte and
Greenville] slides to be a copy of Slick Slide's Launch Slide." But there are no
allegations to support a reasonable inference of intent to copy. And even if the
allegation of intent to copy *the Launch Slide* were accepted as true, it does not imply
an intent to infringe *the '821 design patent*. The FAC provides no images of the
Launch Slide nor any allegations to show its correspondence with the '821 patent,

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

such that alleging copying of the Launch Slide could reasonably be viewed as alleging intentional infringement of the '821 design patent.

Paragraph 20 purports to allege Big Air's knowledge that "the manufacture, offer for sale, sale, and importation of the [Charlotte and Greenville] slides," as well as "the use of th[os]e slides" "constitute infringement of the '821 patent." [3] But the FAC provides no additional facts to support an inference that discovery will reveal evidence of Big Air's knowledge of infringement, i.e., its "subjective state of mind, whether actual knowledge or the subjective beliefs (coupled with action to avoid learning more) that characterizes willful blindness." *TecSec*, 978 F.3d at 1286. Indeed, the stated support for this conclusory allegation of knowledge of infringement is the equally conclusory paragraph 23 allegation, debunked above, that "those slides are intended to be a copy of Slick Slide's Launch Slide."

Taken together, the allegations of paragraphs 18–20, 23, and 32–34 fail to suggest Big Air's actual knowledge of infringement, and there are no additional allegations to reasonably imply Big Air's willful blindness. That is, the FAC includes no allegations that would support a reasonable inference that Big Air (1) subjectively believed in a high probability of infringement and (2) took deliberate action to avoid learning of the infringement. The FAC thus fails to allege facts sufficient to support the existence of Big Air's pre-suit knowledge of infringement.

---

[3] The FAC often refers to the franchisees' alleged "purchase and use" of the allegedly infringing slides, rather than just "use," *see* FAC, ¶¶ 11, 13, 14, 16–18, 32, but it never alleges that "purchase" alone amounts to direct infringement, *id.*, ¶ 20 (identifying only "use of the slides" and "manufacture, offer for sale, sale, and importation of the slides" as acts that "constitute infringement"). Nor could it purport to do so, because "purchase" is not among the acts of direct infringement stated in 35 U.S.C. § 271(a), which provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Service of the complaint fails to cure the defect for the period following commencement of the action. This is so for at least two reasons. First, the FAC includes no allegations that the allegedly infringing acts of "manufacture" and "use" are ongoing; that is, that Dreamland is continuing the allegedly infringing manufacture and that Charlotte and Greenville are continuing the allegedly infringing use. All the FAC alleges is "*the* slides" shown in either Exhibit B or Exhibit C, for Charlotte and Greenville, respectively. FAC, ¶¶ 13, 14, 16–23, 25–28, 31–32, 36. None suggest the slides in these exhibits are merely exemplary. The allegations about the manufacture of the slides therefore do not reasonably imply ongoing activity, or that the manufacture was anything more than a one-time undertaking by Dreamland for each of Charlotte and Greenville. And there are no allegations that the alleged use by Charlotte and Greenville was happening as of the service date of the original complaint, May 6, 2024, *see* ECF No. 10, or that such use was "without authority," as required by 35 U.S.C. § 271(a) for imposing the direct infringement liability that is required for finding induced infringement.

There is, however, reason to infer no such use was ongoing, or, if it was, that it was authorized. Slick Slide sued Charlotte, Greenville, and Mr. Wittman for allegedly infringing the '821 patent, filing these suits in June, August, and November of 2023, respectively. *See Slick Slide LLC v. Big Air University City*, Case No. 3:23-cv-00348-FDW-SCR (W.D.N.C. 2023) ("*University City*"); *Slick Slide LLC v. Pelletier*, Case No. 6:23-cv-03924-JDA (D.S.C. 2023) ("*Pelletier*"); *Slick Slide LLC v. Wittman*, Case No. 1:23-cv-01486-WCG (E.D. Wis. 2023) ("*Wittman*").[4] The parties stipulated to dismissal of the Charlotte *University City*

---

[4] As matters of public record, the Court may take judicial notice of each case, and of the publicly available documents filed in each, in deciding the present motion to dismiss. *Innerlite, Inc. v. Zirc Dental Prod., Inc.*, No. 2:13-cv-07501-DOC-RNB, 2014 WL 12601024, at *3 (C.D. Cal. Sept. 2, 2014) (citing Fed. R. Evid. 201; *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001)).

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

case in December 2023, some six months before service of the original complaint herein. *See University City*, ECF No. 14. The stipulation does not indicate whether the parties settled, but Slick Slide admits that it was indeed a settlement, stating so in a recent filing in the *Wittman* case. *See Wittman*, ECF No. 20, p. 6 ("Slick Slide admits it settled a patent infringement case against BA NE Charlotte LLC."). The settlement either required Charlotte to stop using or allowed it to continue, in which case the use was authorized by Slick Slide from the date of the settlement forward. Service of the complaint could not, in either circumstance, convey knowledge of Charlotte's direct infringement to Big Air.

In the Greenville case, judgement was entered for Slick Slide in the amount of $10,000 on May 29, 2024, as a result of its acceptance of Greenville's offer of judgment, which Greenville had served on May 14. *See Pelletier*, ECF No. 30 (Notice of Acceptance), ECF No. 33 (Amended Judgment). As with Charlotte, Greenville either ceased use as a result of the judgment, or it proceeded with authorization from Slick Slide. The only viable period of unauthorized use following service of the original complaint in the present case would be the three weeks from May 6 to May 19. But, since neither the FAC nor the original complaint alleges any particular act by Big Air of inducing Greenville's direct infringement during that brief period, both fail to convey knowledge to Greenville's direct infringement to Big Air.

The second reason that service of the complaint fails to convey knowledge in this case is the particularly poor quality of the infringement allegation, as explained in section IV.B.3, below. It articulates three functional aspects of the slide shown in the figures of the '821 patent (hood, slide trajectory, exit trajectory), labels them ornamental, then declares that the Charlotte and Greenville slides have them too. Since the '821 patent is a design patent and not a utility patent, substantial similarity with ideas, like a "launch" at the exit of the slide, cannot amount to liability for infringement.

The facts alleged, along with the public record, fail to make plausible Big Air's pre- or post-suit actual knowledge of direct infringement, or its subjective belief in that infringement (combined with affirmative acts to avoid learning of it). The Court should therefore dismiss the FAC.

## B.     The FAC's threadbare allegations fail to demonstrate likely discovery of facts needed to warrant the considerable expense associated with litigation.

The Supreme Court has noted that "district courts have the authority and responsibility to ensure frivolous cases are dissuaded." *Commil*, 575 U.S. at 647. Consistent with that premise, and as discussed in section II.B, above, the Court held in *Iqbal* that while "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, [] it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79 (emphasis added). So "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, nor do "'naked assertion[s]' devoid of 'further factual enhancement,'" *id.* (quoting *Twombly*, 550 U.S. at 557). The Ninth Circuit thus requires that "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216.

### 1.     The FAC fails to allege facts sufficient to infer actionable inducement.

To suggest liability under § 271(b) for "*actively* induc[ing] the infringement of a patent," the pleader must allege "the taking of affirmative steps to bring about the desired result." *Global-Tech*, 563 U.S. at 760. There are no specific acts of inducement alleged in the FAC, just a bare recitation of a number of synonyms for "induced," namely, one or both of "caused" and "enticed," FAC, ¶¶ 11, 14, 17, 18,

20, 31, "communicated and cooperated," *id.*, ¶ 22, "convinced," *id.*, ¶¶ 31, 32, "coordinated," *id.*, ¶¶ 14, 17, 22, "encouraged," *id.*, ¶¶ 32, 34, "facilitated," *id.*, ¶¶ 22, 32, and "instructed," *id.*, ¶¶ 14, 17. To ensure these alleged acts of inducement are truly actionable and not just superficial labels employed to pry open the doors of discovery and subject Big Air to the expense of litigating a groundless claim, more facts are required.

Evaluating a claim's plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The context here is that there are only two slides accused of infringement, one at Charlotte and one at Greenville, and Big Air's only alleged relationship with these two franchisees is that of franchisor. FAC, ¶¶ 12, 13, 15, 16. And the FAC does not provide any allegations about the terms of the relevant franchise agreements, or that Charlotte and Greenville were obligated by contract or any other means to use specific pieces of equipment dictated to them by Big Air.

"A franchise is a business relationship through which … [t]he franchisee sells goods or services under the franchisor's name and benefits from the universal standard of the franchisor, *but retains autonomy when implementing the operational standards on a day-to-day basis and otherwise independently owns, runs, and staffs itself*." *Pereda v. Atos Jiu Jitsu LLC*, 85 Cal. App. 5th 759, 768–69 (2022) (brackets and emphasis added; alterations, quotation marks, and citation omitted). The mere existence of the franchisor/franchisee relationship therefore does not provide the additional facts needed to explain just how, and under what auspices, Big Air could make Charlotte or Greenville use *any* particular piece of equipment, let alone the two specific slides at issue in this case. Nor does the FAC allege that Big Air profited financially or stood to gain anything from connecting its franchisees with Dreamland for manufacturing services. The alleged acts of inducement thus fail to state a plausible claim for relief.

2. **The FAC fails to allege facts sufficient to infer Zac Wittman's actual or apparent authority to act for Big Air.**

As noted in section III.A, above, the FAC alleges that Mr. Wittman, while "serving as a representative of [Big Air] or at least representing that he was a representative of [Big Air]," "instructed" two of Big Air's franchisees to obtain and "use" a slide in each of their respective trampoline parks, *id.*, ¶¶ 14, 17. The FAC does not allege that Mr. Wittman was a principal or managing member of Big Air, nor does it provide any additional allegations about Mr. Wittman purportedly "serving as a representative of [Big Air] or at least representing that he was a representative of [Big Air]."

Most conspicuously, the FAC provides no facts to support an inference that Mr. Wittman was an authorized agent of Big Air, cloaked in actual authority from Big Air to act on its behalf, or that Big Air directed him to order the accused slides, or that Big Air ratified the conduct after the fact. Absent these facts, Big Air cannot be held liable for the alleged wrongful acts of Mr. Wittman. *See Doe v. Roman Cath. Archbishop of Los Angeles*, 247 Cal. App. 4th 953, 969 (2016) ("a principal may be liable for the wrongful conduct of its agent … (1) if the principal directly authorizes the tort or crime to be committed; (2) if the agent commits the tort in the scope of his employment and in performing service on behalf of the principal … ; or (3) if the principal ratifies its agent's conduct after the fact by voluntarily electing to adopt the agent's conduct as its own") (citations and quotation marks omitted, alterations adopted).

3. **The FAC fails to allege facts sufficient to infer actionable substantial similarity between accused slides and claimed ornamental design.**

The FAC purports to allege that "[t]he respective designs of the '821 patent and the recreational [Charlotte and Greenville] slides … are substantially the same such that an ordinary observer, confusing one for the other, would be induced to

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

purchase the infringing design." FAC, ¶ 25. But the FAC fails to allege facts to show how this could possibly be the case, if the functional aspects of the design are excluded, as they must be. *Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1320 (Fed. Cir. 2016) (design patent may contain both functional and ornamental elements, but scope is limited to the ornamental aspects of the design.); *OddzOn Prod., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997) ("Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent.").

The FAC recites (1) a "hood [] that encloses the first section of the claimed slide," (2), an "overall slide trajectory," and (3) a "slide exit trajectory at the end of the slide" as "ornamental and novel" design elements of the '821 patent, *id.*, ¶ 26, and alleges that patent Figures 1, 2, 3, and 4 show "a novel hood design … that is nearly identical to the hood design of the [Charlotte and Greenville] slides," that Figures 1, 2, and 7 show that same "nearly identical" level of similarity for "overall slide trajectory," and that Figures 2, 5, and 6 do so for the "slide exit trajectory," when comparing the patent figures with the images of the accused slides provided in Exs. B and C to the FAC. *Id.*, ¶ 27. But comparing the patent figures with the images from the exhibits fails to inform; it only raises more questions. *See* graphic, next page.

The FAC fails to plausibly state a design patent infringement claim on the basis of these alleged similarities, since each pertains to a feature that is clearly functional and not ornamental, and no effort is made to identify any non-functional, ornamental points of similarity. But even accepting the FAC's recitation of the protected design elements, the mere textual correlation of patent figures with remote images from an exhibit fails, in this case, to plausibly state a viable claim for infringement. No actionable similarities are visible as to hood, slope, or exit trajectory.

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**



The exhibits do not include any images that afford an evaluation of substantial similarity between the allegedly infringing slides and the ornamental design claimed by the '821 patent. The FAC thus fails to plausibly allege the direct infringement required for imposing indirect infringement liability on Big Air.

**C.    The FAC fails to allege facts tending to exclude the possibility that Big Air's alleged inducement occurred before the patent issued, and that Zac Wittman's alleged conduct thereafter was not directed or authorized by Big Air.**

The Ninth Circuit held in *Century Aluminum* that "[w]hen faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation." *Century Aluminum*, 729 F.3d at 1108 (citing *Iqbal*, 556 U.S. at 678). "Something more is needed, such as facts tending to exclude the possibility that the alternative

explanation is true, *see Twombly*, 550 U.S. at 554, 127 S.Ct. 1955, in order to render plaintiffs' allegations plausible within the meaning of *Iqbal* and *Twombly*." *Id.*, 729 F.3d at 1108.

The FAC does not allege many dates, but the facts that it does allege do not tend to exclude the possibility that Big Air's alleged inducement occurred before the '821 design patent issued, and that Mr. Wittman's alleged conduct thereafter was not directed or authorized by Big Air. The FAC alleges that the '821 patent issued on December 27, 2022, FAC, ¶ 9, and that "Jon Cox of [Charlotte] emailed a copy of the '821 patent to representatives of [Big Air], including Kevin Odekirk and Erin Davis," and also "to Zac Wittman," about two months later, "on or about February 17, 2023," *id.*, ¶ 19. The FAC also alleges that "a representative of Defendant" engaged in certain conduct "after the '821 patent was issued," but identifies only "Zac Wittman" as having "engaged in this conduct." *Id.*, ¶¶ 14, 17. The FAC thus alleges no facts regarding the timing of Big Air's alleged inducement, except the acts allegedly committed by Mr. Wittman, whose status as an authorized Big Air agent cannot be inferred from the FAC allegations. *See* section IV.B.2, above. If Big Air's alleged acts all occurred before the patent issued, and none occurred after, then there can be no liability imposed on Big Air for induced infringement. *Nat'l Presto Indus., Inc. v. W. Bend Co.*, 76 F.3d 1185, 1196 (Fed. Cir. 1996) ("as a matter of law, affirmative acts taken before a patent issues cannot violate § 271(b)").

The FAC includes just one more allegation regarding timing, in which it purports to attribute acts occurring after the issue date for the '821 patent to "Defendant," i.e., Big Air, without specifying Mr. Wittman (or anyone else) as the actor. FAC, ¶ 18. But, since all the other acts described as occurring "after the '821 patent was issued" *are* attributed to Mr. Wittman, *see id.*, ¶¶ 14, 17, and none to Big Air, this allegation can only be interpreted as describing acts committed by Mr. Wittman. Moreover, alleging conduct "after the '821 patent was issued" does not properly allege conduct with *knowledge* of the patent.

1   Moreover, in the *Wittman* case, discussed in section IV.A, above, which is

2   based on alleged infringement by the Charlotte slide, Slick Slide assigns all liability

3   for both induced and direct infringement to Mr. Wittman, with no mention of Big

4   Air. *Wittman*, ECF No. 1. Rather, the allegation in that case is that Mr. Wittman,

5   "[k]nowing his conduct to be unlawful, … formed V2 Adventure Products USA,

6   LLC for the improper purpose of avoiding personal liability for his misconduct."

7   *Wittman*, ECF No. 1, ¶ 23. This is inconsistent with the premise that he was an

8   authorized agent of Big Air (after learning of the '821 patent) since that status,

9   according to this allegation, would have provided the desired protection from

10  personal liability and obviated the need to form V2.

11  The facts alleged in the FAC are thus consistent with Big Air, *before* learning

12  of the '821 design patent, connecting Charlotte and Greenville with Dreamland as a

13  low-cost manufacturing source, and are also consistent with all design work being

14  completed before learning of the '821 patent. The facts alleged, combined with the

15  public record from the *Wittman* case, are likewise consistent with Mr. Wittman

16  being an unauthorized rogue agent whose acts cannot be imputed to Big Air. Also,

17  the facts alleged are consistent with Mr. Wittman's acts, if viewed as authorized,

18  happening after issuance of the '821 patent, but before he learned of it.

19  The FAC thus alleges facts that are "'merely consistent with' [Slick Slide's]

20  favored explanation but are also consistent with the alternative explanation."

21  *Century Aluminum*, 729 F.3d at 1108 (citing *Iqbal*, 556 U.S. at 678). Without

22  "[s]omething more …, such as facts tending to exclude the possibility that the

23  alternative explanation is true," the FAC's allegations are not plausible within the

24  meaning of *Iqbal* and *Twombly*. *Id.*

25  **V.   CONCLUSION**

26  For the reasons set forth above, Big Air respectfully requests that this Court

27  grant its motion to dismiss Slick Slide's First Amended Complaint for induced

28  patent infringement.

25

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

1

Dated: June 26, 2024

MASCHOFF BRENNAN GILMORE
ISRAELSEN & MAURIEL LLP

2

3

By: */s/ R. Parrish Freeman*

4

R. Parrish Freeman (admitted *pro hac vice*)

5

Sterling A. Brennan

6

Carol A. Hanna Girgis

7

Attorneys for Defendant

8

Big Air Franchising, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed and served electronically in compliance with Federal Rule of Civil Procedure Rule 5 and Local Rule 5-3.2. As such, this document was served on all counsel who have consented to electronic service on the date of filing.

DATED this 26th day of June, 2024          Respectfully submitted,


                                                          *Jessica D. Garcia, ACP*
                                                          Jessica D. Garcia, ACP

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**